UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTHERN INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **ROBIN SHOVAN,** | ) Case No. 1:19-cv-2830 |
| Plaintiff, | ) **COMPLAINT** |
| vs. | ) **DEMAND FOR JURY TRIAL** |
| **DISCOVER FINANCIAL SERVICES, INC.,** | ) |
| Defendant. | ) |

Plaintiff, ROBIN SHOVAN ("Plaintiff"), through her attorneys, alleges the following against Defendant, DISCOVER FINANCIAL SERVICES, INC., ("Defendant"):

## NATURE OF THE CASE

1. Plaintiff brings this action seeking damages and any other available legal or equitable remedies resulting from the illegal actions of DISCOVER FINANCIAL SERVICES, INC., ("Defendant"), in negligently, knowingly, and/or willfully communicating with Plaintiff in connection with the collection of alleged debts in for violations of Plaintiff's personal privacy by this Defendant and their agents in their illegal efforts to collect an alleged consumer debt from Plaintiff, as well as for violations of the Telephone Consumer Protection Act [47 U.S.C. § 227].

## JURISDICTION & VENUE

2. Jurisdiction of this Court arises under 47 U.S.C. 227 and 28 U.S.C. § 1337. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. Venue in this District is proper in that the Defendant transacts business here

3. Further, Plaintiff resides in Marion County, Indiana.

## PARTIES

4. Plaintiff, ROBIN SHOVAN ("Plaintiff"), is a natural person residing in Marion County, Indiana.

5. Upon information and belief, the Defendant, is a corporation engaged in the business of collecting debt in this state and in several other states, with its principal place of business located in Delaware. The principal purpose of Defendant is the collection of debts in this state and several other states, and Defendant regularly attempts to collect debts alleged to be due another.

6. Defendant is engaged in the collection of debts from consumers using the mail and telephone. Defendant regularly attempts to collect consumer debts alleged to be due to another.

## FACTUAL ALLEGATIONS

7. Within one year prior to the filing of this action, Defendant contacted Plaintiff to collect money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction and/or "consumer debt."

8. Defendant routinely placed calls to Plaintiff's cellular telephone number ending in 4039 from telephone numbers (614) 758-2394 and (385)-261-7178.

9. Defendant communicated with Plaintiff with such frequency as to be unreasonable under the circumstances and to constitute harassment, sometimes multiple times a day.

10. Within one year prior to the filing of this action, Defendant communicated with Plaintiff with such frequency as to be unreasonable under the circumstances and to constitute harassment.

11. Defendant made repeated calls to Plaintiff's workplace with the intent to harass and embarrass her into paying her debt. On December 13, 2018, Plaintiff requested that Defendant stop harassing her with collection calls at her place of employment.

12. The natural and probable consequences of Defendant's conduct in this regard was to harass, oppress or abuse Plaintiff in connection with the collection of the alleged debt.

13. On or about January 25, 2019, Plaintiff answered one of Defendant's calls to her cellular telephone and advised an agent that Defendant was not in a position to make any payment, and to please stop calling her. Despite these clear instructions, Defendant continued to place dozens of autodialed collection calls to Plaintiff's cellular telephone for several months.

14. Defendant and/or its agent(s) used an "automatic telephone dialing system", as defined by 47 U.S.C. § 227(a)(1) to place these aforementioned collection calls to Plaintiff. The dead air that the Plaintiff experienced on the calls that he received (i.e., when Plaintiff answered there was several seconds where no other person was on the other end) is indicative of the use of an automatic telephone dialing system.

15. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's and/or its agent's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she

is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff.

16. The dead air is essentially the autodialer holding the call it placed to Plaintiff until the next available human agent is ready to accept it. Should the call at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

17. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

18. Defendant's calls were placed to a telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

19. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to store telephone numbers.

20. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call stored telephone numbers automatically.

21. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call stored telephone numbers without human intervention.

22. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call telephone numbers in sequential order. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call telephone numbers randomly.

23. Defendant's telephone dialer system has the capacity to make predictive calls.

24. The telephone dialer system Defendant used to call Plaintiff's telephones selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

25. The telephone dialer system Defendant used to call Plaintiff's telephones simultaneously calls multiple recipients.

26. As of January 25, 2019, when Plaintiff demanded that Defendant cease placing its calls to her cellular telephone, any such consent for Defendant to place its autodialed calls (assuming it existed in the first place), was revoked by Plaintiff. Accordingly, Defendant did not have Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

27. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

   a. Invading Plaintiff's privacy;

   b. Electronically intruding upon Plaintiff's seclusion;

   c. Intrusion into Plaintiff's use and enjoyment of his cellular telephone;

   d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular telephone;

   e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## FIRST CAUSE OF ACTION
### (Violations of the TCPA, 47 U.S.C. § 227)

28. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

29. Defendant violated the TCPA. Defendant's violations include, but are not limited to the following:

(a) Within four years prior to the filing of this action, on multiple occasions, Defendant violated TCPA 47 U.S.C. § 227 (b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

(b) Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiff at Plaintiff's cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and as such, Defendant knowing and/or willfully violated the TCPA.

30. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendant knowingly and/or willfully violated the TCPA, Plaintiff is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

31. Plaintiff is also entitled to seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

**(Violations of the Indiana Deceptive Consumer Sales Act, IC 24-5-0.5-3(a) and b(19))**

32. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

33. Defendant violated I.C. 24-5-0.5-3(a) and (b)(19) by engaging in an unfair, abusive and deceptive practice through its systematic collection efforts towards Plaintiff.

34. The IDCSA states:

"A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." I.C. 24-5-0.5-3(a).

Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier are deceptive acts: The violation by a supplier of 47 U.S.C. 227, including any rules or regulations issued under 47 U.S.C. 227." I.C. 24-5-0.5-3(b)(19)."

35. Plaintiff is a "person" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(2).

36. Defendant is a "supplier" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(3).

37. Defendant's collection calls to Plaintiff were "consumer transactions" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(1)(C).

38. Defendant engaged in unfair, abusive and deceptive behavior in its transactions with Plaintiff. Through systematic and frequent collection attempts, Defendant used an ATDS to relentlessly contact Plaintiff. Defendant was specifically notified by Plaintiff that she did not wish to be contacted.

39. Despite these oral instructions by Plaintiff, Defendant chose to continue harassing Plaintiff with repeated auto-dialed called to her cellular telephone. This was done in an abusive attempt to frighten and harass Plaintiff into submission.

40. In violating the TCPA, Defendant engaged in illegal behavior during its collection efforts towards Plaintiff. Defendant intended that Plaintiff rely on its illegal behavior. The IDCSA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

41. The IDCSA further states:

> "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." I.C. 24-5-0.5-4(a)(1)(2).

42. Defendant's conduct is part of a purposeful and systematic scheme to illegally collect upon unsophisticated consumers who may not be aware of their rights. Defendant's conduct is an incurable deceptive act of which notice would not remedy.

43. Although unsuccessful, Plaintiff made attempts to correct Defendant's incurable deceptive acts by demanding that it cease contacting her. The fact that Defendant was provided with notice to stop calling and refused to abide by said notice, evidenced by consistently calling Plaintiff for months after she told it to stop, shows that its behavior is incurable.

44. To further this notion, Defendant had the opportunity to stop contacting Plaintiff upon Plaintiff's request to stop calling, but refused to do so.

45. Defendant's conduct is part of a systematic scheme to fraudulently contact consumers in Indiana. Upon information and belief, Defendant conducts the same type of behavior on a wide and frequent basis, which goes against the state's goal of preventing the phone from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Even after being in business for so many years, Defendant still

chooses to engage in unfair, deceptive and abusive behavior in its treatment of consumers.

WHEREFORE, Plaintiff, ROBIN SHOVAN, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages, in an amount to be determined at trial, as provided under I.C. 24-5-0.5-4(a)(1)(2);

c. Awarding Plaintiff costs and reasonable attorney fees as provided under I.C. 24-5-0.5-4(a);

d. Enjoining Defendant to cease contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a trial by jury in this action.

RESPECTFULLY SUBMITTED,

Dated: July 9, 2019 **AGRUSS LAW FIRM**

By: /s/ Michael S. Agruss

Michael S. Agruss
Agruss Law Firm
4809 N. Ravenswood Ave, Suite 419
Chicago, IL 60640
Tel: 312-224-4695
Fax: 312-253-4451
michael@agrusslawfirm.com
*Attorney for Plaintiff*